IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| v. | *   **CRIMINAL NO. TMD-12-2671** |
| | *   **(Related Civil No. PWG-13-2154)** |
| **VICTOR L. CARTER,** | * |
| | * |
| **Defendant.** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant pleaded guilty and was sentenced before a United States Magistrate Judge for multiple counts in three separate cases arising out of drunk driving arrests on the Baltimore–Washington Parkway. He now challenges his sentence in the above-captioned case under 28 U.S.C. § 2255. Defendant argues that his Fourth Amendment rights were violated when he was forced to undergo a blood test without officers obtaining a warrant, pursuant to the holding in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). Because Carter's arrest occurred well before *McNeely* was issued, and because the arresting officers reasonably relied on existing Fourth Circuit precedent that permitted warrantless blood tests, I find that even if he had not waived a motion to suppress by entering a guilty plea, he could not have prevailed on such a motion in any event and therefore I deny the § 2255 motion.[1]

---

[1] This Memorandum Opinion and Order addresses Defendant Victor L. Carter's Motion to Vacate Sentence ("Def.'s § 2255 Mot."), ECF No. 13 in TMD-12-2671; ECF No. 1 in PWG-13-2154, and the Government's Opposition ("Gov't's Opp'n"), ECF No. 15 in TMD-12-2671. Only Defendant's § 2255 Motion has been docketed in PWG-13-2154, and all other docket citations herein are to TMD-12-2671.

I.  BACKGROUND

On July 9, 2012, Defendant Victor L. Carter pleaded guilty before Magistrate Judge Thomas M. DiGirolamo to four class B misdemeanors in three separate cases, all arising out of alcohol-related traffic offenses on the Baltimore–Washington Parkway between 2003 and 2012.[2] In this case, Carter was arrested by U.S. Park Police on May 25, 2012 while driving erratically on the Baltimore–Washington Parkway. Def.'s Mot. to Vacate Sentence ("Def.'s § 2255 Mot.") 1, ECF No. 13; U.S.'s Resp. to Def.'s Mot. to Vacate ("Gov't's Opp'n") 3, ECF No. 15. According to the Government, when Carter was stopped he began crying and refused to identify himself, could not perform several elements of a field sobriety test, and had a "white cup of liquor in the center console." Gov't's Opp'n 3. Carter refused a breath-alcohol test, and officers, without obtaining Carter's consent or a warrant, took him to Prince George's Hospital Center where a blood test was performed that returned a blood-alcohol level of .19 grams per 100 milliliters of blood. *Id.* at 3; Def.'s § 2255 Mot. 1. Carter was cited for (1) driving while intoxicated in violation of 36 C.F.R. § 4.23(a)(2); (2) driving under the influence in violation of 36 C.F.R. § 4.23(a)(1); (3) refusal to submit to an alcohol test in violation of 36 C.F.R. § 4.23(c)(2); (4) unsafe vehicle operation in violation of 36 C.F.R. § 4.22(b)(1); (5) driving on a revoked out-of-state license in violation of Md. Code Ann., Transp. § 16-303(g); and (6) failure to remain in a single lane in violation of Transp. § 21-309(b). Citations, ECF No. 1.

---

[2] According to the Government, Carter entered into a consolidated plea deal in three cases, Case Nos. 03-1644M, TMD-12-2471, and TMD-12-2671, Gov't's Opp'n 4, but as the Government has noted, the underlying record contains gaps and, with respect to case number 03-1644M, the case is too old to be available on this Court's CM/ECF system at all. Because this appeal relates only to TMD-12-2671, I will accept the representations of the Government with respect to the earlier cases as they are necessary to provide context. Carter also filed a copy of his § 2255 Motion in TMD-12-2471, but I denied that motion because TMD-12-2471 involved only a consented-to breath test, and not a blood test. Letter Order, ECF No. 26 in TMD-12-2471; ECF No. 2 in PWG-13-2157.

On July 9, 2012, Carter appeared to enter a plea of guilty to, *inter alia*, counts one and five in TMD-12-2671. Gov't's Opp'n 4. On November 7, 2012, he was sentenced to six months' imprisonment in TMD-12-2471 and six months' imprisonment on each of counts one and five in this case, to run consecutively for a total of eighteen months' imprisonment, as well as twenty-four months' probation in 03-1644M. *Id.*; J. in Criminal Case, ECF No. 7.

On July 22, 2013, Carter filed the instant Motion to Amend Sentence arguing that his Fourth Amendment rights were violated when he was subjected to a warrantless blood test against his will, Def.'s § 2255 Mot. 1 (citing *Missouri v. McNeely*, 133 S. Ct. 1552 (2013)), and the Government has responded, Gov't's Opp'n. I initially ordered Carter to file his reply, if any, by November 6, 2013, Letter Order, ECF No. 17, but following several pieces of returned mail and a motion to extend time indicating that Carter had been moved to a facility in Brooklyn, New York and undergone surgery in November, *see* Letter from Victor Carter to the Court (Nov. 12, 2013), ECF No. 20, he eventually was given until December 13, 2013, Letter Order, ECF No. 23.[3] That date now has passed, and Carter has not filed a reply. Accordingly, Defendant's Motion to Vacate is ripe and is before me; having reviewed the filings, I find a hearing is not required. Loc. R. 105.6.

II. **DISCUSSION**

28 U.S.C. § 2255(a) permits a prisoner to file a motion to vacate, set aside or correct his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States . . . ." The prisoner must prove his case by a preponderance of the evidence. *Brown v.*

---

[3] In my November 21, 2013 Letter Order, I also noted that Carter had claimed that he was being "'illegally detained' because his 'total time of incarceration was one year which exhausted November 7, 2013.'" Letter Order 1, ECF No. 23. I instructed Carter that, if he wished to make arguments with respect to the length of his imprisonment, he should do so in his reply memorandum. Because Carter never filed a reply, that argument is waived.

*United States*, Civil No. DKC-10-2569 & Crim. No. DKC-08-529, 2013 WL 4562276, at *5 (D. Md. Aug. 27, 2013). If the court finds for the prisoner, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Although "a *pro se* movant is entitled to have his arguments reviewed with appropriate deference," the court may summarily deny the motion without a hearing "if the § 2255 motion, along with the files and records of the case, conclusively shows that [the prisoner] is not entitled to relief." *Brown*, 2013 WL 4562276, at *5 (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir.1978); 28 U.S.C. § 2255(b)).

As a threshold matter, the Government argues that Carter waived his right to seek suppression of the blood test results both because he did not make a motion to suppress in the time required by Fed. R. Crim. P. 12 and because he waived any such right by entering a plea of guilty.

The Government is correct that, as a general principle, Rule 12 requires a motion to suppress to be made prior to trial, Fed. R. Crim. P. 12(b)(3)(C), and that the failure timely to make such a motion may waive it, Fed. R. Crim. P. 12(e). However, Rule 12(e) also states that "a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(e). The case on which Carter rests his motion, *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), was not issued until January 9, 2013, more than three months after Carter was sentenced. He had no reason to believe that he could challenge the blood test evidence at the time he entered his plea, and therefore has shown good cause for not making that argument earlier. *See United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014).

The argument that, by entering a plea of guilty, Carter forfeited the right to contest the facts underlying his conviction rests on firmer ground. In essence, in asking me to consider

whether his blood test results should be suppressed, Carter seeks to withdraw his guilty plea, relief to which a defendant has "no 'absolute right,' . . . and the district court has discretion to decide whether a 'fair and just reason' exists upon which to grant a withdrawal." *United States v. Bowman*, 348 F.3d 408, 413–14 (4th Cir. 2003) (quoting *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000)). However, "[t]he most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." *Id.* at 414. The transcript in this case is incomplete, and although Judge DiGirolamo appears to have found that Carter entered into his plea "freely, voluntarily and knowingly," Plea Tr. 4:25, there is no record of the colloquy as is required by Fed. R. Crim. P. 11(g). It therefore is not clear that the Government can rely on Carter's plea alone to foreclose his § 2255 petition, and the Government cites no case law to support its position. However, the failure of a plea to comply with the formal requirements of Rule 11 "is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h); *see also United States v. Timmreck*, 441 U.S. 780, 785 (1979). Even if the record does not conclusively establish that Carter knowingly and voluntarily waived his trial rights in the colloquy required by Fed. R. Crim. P. 11(b), it is apparent that he could not have prevailed on a suppression motion in any event.

The exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 131 S. Ct. 2419, 2424 (2011). However, the exclusion of incriminating evidence wrongly obtained also imposes "substantial social costs" insofar as

> [a]n objectionable collateral consequence with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system.

*United States v. Leon*, 468 U.S. 897, 907 (1984) (citing *Stone v. Powell*, 428 U.S. 465, 490 (1976)). Accordingly, "'searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule.'" *United States v. Stephens*, 764 F.3d 327, 336 (4th Cir. 2014) (quoting *Davis*, 131 S. Ct. at 2323–24).

Carter's challenge to his involuntary, warrantless blood test relies on the recent Supreme Court case *McNeely v. Missouri*, in which the Court rejected a *per se* rule that the natural dissipation of alcohol in the bloodstream over time creates an exigency that justifies an involuntary blood test in drunk driving cases without first obtaining a warrant. 133 S. Ct. at 1562. As the Court explained, "while natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect must be determined case by case based on the totality of the circumstances." *Id.*

Prior to *McNeely*, the principal case on point in the Fourth Circuit was *United States v. Reid*, 929 F.2d 990 (4th Cir. 1991), which held that the societal interest in preventing drunk driving, the minimal intrusion of Breathalyzer tests, and the fact that "time of the essence when testing for alcohol in the blood stream . . . sets out exigent circumstances which are sufficient to require that the police be allowed to test drunk drivers without first having to obtain a warrant." 929 F.2d at 994. Though *Reid* considered only a breath test, and not a blood test, it since has been cited more generally for the proposition that exigent circumstances justify warrantless tests to determine the blood-alcohol concentration of a suspected drunk driver. *See United States v. Sauls*, 981 F. Supp. 909, 913 (D. Md. 1997) ("It is clear that an individual may be compelled to take a chemical test so long as there are reasonable grounds to believe that the person was driving a motor vehicle while under the influence of alcohol or drugs."); *see also, e.g., State v.*

6

*Bank*, 90 P.3d 156, 164 & n.44 (Alaska 2004) ("Many courts have implicitly or explicitly held that the dissipation of alcohol always creates sufficient exigency to dispense with the warrant requirement . . . ."); *State v. Shriner*, 751 N.W.2d 538, 547 n.11 (Minn. 2008) (citing *Reid* and other cases for the proposition that "[o]ther courts have interpreted *Schmerber* [*v. California*, 384 U.S. 757 (1966),] as concluding that the naturally rapid dissipation of alcohol in the bloodstream creates an emergency that justifies a warrantless blood draw"); *State v. Lerette*, 858 S.W.2d 816, 818–19 (Mo. Ct. App. 1993) (relying on *Reid*, among other cases, to uphold warrantless blood test); *State v. Bohling*, 494 N.W.2d 399, 404 (Wis. 1993) (same). Further, though *Reid* itself only considered a Breathalyzer test, it expressly highlighted and relied on the Supreme Court's decisions that "upheld blood tests as not violating the Fourth Amendment." *Reid*, 929 F.2d at 994 (citing, *e.g.*, *Skinner v. Ry. Labor Exec. Ass'n*, 489 U.S. 602, 625 (1989)).

In light of this, at the time of Carter's arrest, "in this district, the court, prosecutors, and police were all operating under the belief that a warrant was not necessary to obtain a nonconsensual blood draw where there was probable cause for DWI. That belief, moreover, was reasonably inferred from binding precedent." *United States v. Lechliter*, 3 F. Supp. 3d 400, 406 n.3 (D. Md. 2014). And even if *Reid* itself did not explicitly hold that such searches were *per se* permissible, its clear implication was such that "it was objectively reasonable for a reasonably well-trained officer to rely on that precedent." *Stephens*, 764 F.3d at 336.

There is little question that, to the extent that *Reid* has been interpreted to set forth a *per se* rule that warrantless blood tests are permissible in drunk driving cases, it no longer is good law and, were Carter arrested today, the warrantless blood draw at issue would not be permitted without a warrant or a specific exigency. But because excluding the fruits of a search that reasonably relied on the law at the time would serve no deterrent effect, *McNeely* does not

require exclusion. Even if Carter were permitted to withdraw his plea, it would not affect the outcome of this case and therefore any error under Rule 11 was harmless.

## III. CONCLUSION

For the reasons stated above, Defendant's Motion to Vacate Sentence, ECF No. 13, is DENIED.

It is so ordered.

Dated: November 10, 2014

/S/
Paul W. Grimm
United States District Judge